IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC R. WILLIAMS, : | | |
| Plaintiff : | | |
| : | No. 1:19-cv-720 | |
| v. : | | |
| : | (Judge Rambo) | |
| MICHELLE MAGEE, *et al.*, : | | |
| Defendants : | | |

# MEMORANDUM

This matter is before the Court pursuant to Defendant Correct Care Solutions, LLC ("CCS")'s motion to dismiss (Doc. No. 16) *pro se* Plaintiff Eric R. Williams ("Plaintiff")'s complaint (Doc. No. 1). Plaintiff has neither filed a brief in opposition nor a motion for an extension of time to do so. Accordingly, because the time to respond has expired, CCS's motion is ripe for disposition. For the following reasons, the Court will grant the motion to dismiss.

## I. BACKGROUND

Plaintiff initiated the above-captioned action on April 24, 2019 by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants Michelle Magee ("Magee"), Dr. Platt ("Platt"), Brian Shiptoski ("Shiptoski"), Jason Kowalski ("Kowalski"), Dr. Andrew Newton ("Newton"), and CCS. (Doc. No. 1.) He also filed a motion for leave to proceed *in forma pauperis*. (Doc. No. 2.) By Order dated May 1, 2019, the Court granted Plaintiff leave to proceed *in forma pauperis* and directed service of his complaint upon the Defendants. CCS filed its motion to

dismiss on July 1, 2019.  (Doc. No. 16.)  Defendants Magee and Kowalski filed an answer to the complaint on July 3, 2019.  (Doc. No. 18.)  Defendants Newton, Platt, and Shiptoski filed a motion to dismiss on July 8, 2019.[1]  (Doc. No. 19.)

Plaintiff is a former Pennsylvania state inmate.  (Doc. No. 1 ¶ 1.)  He maintains that he had no history of mental illness before his incarceration.  (*Id.* ¶ 10.)  On December 5, 2014, Plaintiff went through intake at SCI Graterford.  (*Id.* ¶ 11.)  That month, he met with a mental health professional and "explained that he was worried about his wife and he had not been able to sleep for several nights."  (*Id.* ¶¶ 12-13.)  He was prescribed Rymron, but eventually stopped taking the medication because it made him experience "near sedation."  (*Id.* ¶¶ 14-15, 17.)  Plaintiff was transferred to SCI Camp Hill in February of 2015.  (*Id.* ¶ 18.)  He maintains that he never had a "PRT meeting" at SCI Graterford and SCI Camp Hill.  (*Id.* ¶ 19.)

Plaintiff was transferred to SCI Mahanoy in May of 2015.  (*Id.* ¶ 21.)  By January of 2016, his "marriage had become strained to the point that he and his wife started discussing divorce."  (*Id.* ¶ 22.)  Plaintiff began to lose sleep and his appetite, and on February 15, 2016, received a misconduct "for unauthorized use of telephone privileges while trying to save his marriage."  (*Id* ¶¶ 24-25.)  When Unit Manager

---

[1] The motion to dismiss filed by Defendants Newton, Platt, and Shiptoski is not yet ripe for disposition and will therefore be addressed in a subsequent Memorandum.

Holly served Plaintiff with the misconduct, Plaintiff asked him to arrange for Plaintiff to see Defendant Magee in the psychology department. (*Id.* ¶ 26.)

When Plaintiff met with Defendant Magee, he told her that he was facing a potential divorce, was experiencing loss of appetite, and sleep, and had been "battling depression for approximately one and one half months." (*Id.* ¶¶ 27-28.) Defendant Magee referred him to see Defendant Platt. (*Id.* ¶ 30.) One week later, Defendant Platt met with Plaintiff and asked him about his mental health history and his family's mental health history. (*Id.* ¶¶ 31-37.) Defendant Platt informed Plaintiff that he "was genetically predisposed to depression due to his father's history of mental illness." (*Id.* ¶ 38.) Defendant Platt prescribed Plaintiff Depakote and instructed him to take 300 milligrams twice a day. (*Id.* ¶ 39.)

Plaintiff began taking Depakote and "immediately began to have complications." (*Id.* ¶¶ 40-41.) In March of 2016, he told Defendant Platt that he "would be in a drug induced stupor throughout most of the day while still feeling depressed." (*Id.* ¶ 42.) Defendant Platt told him that he needed to get used to the medication. (*Id.* ¶ 43.) Plaintiff continued to take Depakote, but at a follow-up visit in April of 2016, he told Defendant Platt he had not taken the medication in three (3) weeks "because 300 milligrams twice daily was still to[o] much for him." (*Id.* ¶ 44.)

Defendant Platt decided to switch Plaintiff's prescription to 150 milligrams of Lithium twice daily. (*Id.* ¶ 47.)

In July of 2016, Plaintiff saw Defendant Shiptoski for a follow-up appointment. (*Id.* ¶ 49.) Plaintiff stated that he no longer felt depressed but that the Lithium was causing complications such as dry mouth, fatigue, stomach cramps, headaches, and muscle aches. (*Id.* ¶¶ 49-50.) Plaintiff also noted he "became withdrawn, easily annoyed and extremely agitated." (*Id.* ¶ 51.) Defendant Shiptoski noted that Plaintiff could have toxic levels of Lithium in his blood and ordered a blood draw. (*Id.* ¶ 52.) Plaintiff last took Lithium during the first week of August of 2016 but continued to have blood draws through December of 2016. (*Id.* ¶¶ 53-54.) From August of 2016 through December of 2017, his medication order remained in place and no one mentioned Plaintiff's non-compliance. (*Id.* ¶ 55.) Defendants Shiptoski and Magee met with Plaintiff every sixty (60) to ninety (90) days, and Plaintiff "regularly expressed that he no longer felt depressed and that he was cop[]ing with prison life relatively well." (*Id.*)

On December 5, 2017, Plaintiff had an annual review conducted by Unit Counselor Boltz. (*Id.* ¶ 56.) After giving Boltz his name and institution number, Boltz asked Plaintiff "why he was listed as D-stability with a Z-Code." (*Id.* ¶¶ 58-59.) Boltz explained that "D-stability with a Z-Code means he has extreme mental

illness." (*Id.* ¶ 61.) Plaintiff asked to see Defendant Magee. (*Id.* ¶ 62.) When Defendant Magee arrived, Plaintiff asked her why he was listed as D-stability with a Z-Code. (*Id.* ¶ 63.) Defendant Magee stated that she did not know but that Plaintiff could speak to Defendant Shiptoski on December 21, 2017. (*Id.* ¶ 64.)

On December 21, 2017, Defendant Shiptoski told Plaintiff that he was not the one who diagnosed him as D-stability with a Z-Code. (*Id.* ¶¶ 65-66.) He advised Plaintiff "to seek the opinion of an outside physician." (*Id.* ¶ 68.) Plaintiff told Defendant Shiptoski that Defendant Magee had told him that he would not be granted parole if he continued to be non-compliant with his medication. (*Id.* ¶ 69.) He stated that "he no longer felt depressed and did not have a need to take medication." (*Id.* ¶ 70.) Defendant Shiptoski stated that he had not diagnosed Plaintiff and had not prescribed medication, and Plaintiff responded that he did not want to take medication but would do so anyway. (*Id.* ¶¶ 71-72.)

On January 3, 2018, Plaintiff had a PRT meeting with Defendants Magee, Shiptoski, and Kowalski. (*Id.* ¶ 75.) Plaintiff asked Defendant Magee if she agreed with his diagnosis, and she answered affirmatively. (*Id.* ¶¶ 79-80.) When Plaintiff asked Defendant Shiptoski the same question, he refused to answer. (*Id.* ¶¶ 81-82.) Defendant Kowalski "chimed in and stated that Plaintiff ha[s] Bipolar Disorder which is why he ha[s] uncontrolled aggression." (*Id.* ¶ 83.) Plaintiff responded "that

5

his actions and interactions with staff and inmates alike contradict[ed] this diagnosis" and that "he reported that he was depressed due to being faced with a potential divorce back in 2016." (*Id.* ¶ 84.) Defendant Magee reiterated that Plaintiff would not be granted parole if he refused to take medication. (*Id.* ¶ 86.) Plaintiff responded that he would take medication but would not take Lithium anymore. (*Id.* ¶ 87.) Defendant Magee told Plaintiff that she would submit a referral (*id.* ¶ 88), and Defendant Kowalski stated that he would prescribe medication and that Plaintiff should take every dose until he was reviewed by the parole board (*id.* ¶ 89).

On January 19, 2018, Plaintiff met with Defendant Newton. (*Id.* ¶ 92.) Defendant Newton stated that "Plaintiff did not need to take medication." (*Id.* ¶ 93.) He told Plaintiff that he did not believe that Plaintiff has Bipolar Disorder and noted that he would remove Plaintiff's name from the Department of Corrections ("DOC")' mental health roster. (*Id.* ¶ 95.) Plaintiff, however, had to sign a consent form to do so, which Plaintiff did. (*Id.* ¶¶ 95-96.)

On February 19, 2018, Plaintiff saw Defendant Magee, who told him that Defendant Newton had diagnosed him with Antisocial Personality Disorder, stating that "this disorder was no big deal because he does not have to take medication to treat this disorder." (*Id.* ¶ 97.) Plaintiff told Defendant Magee that Defendant Newton had stated that Plaintiff's name would be removed from the DOC's mental

6

health roster.  (*Id.* ¶ 98.)  Defendant Magee indicated that "she was unaware as to [w]hy [Defendant] Newton changed the diagnosis but that she would arrange for Plaintiff to speak with" him.  (*Id.* ¶ 99.)

Plaintiff saw Defendant Newton again on March 19, 2018.  (*Id.* ¶ 100.)  He asked Defendant Newton why he had changed his diagnosis instead of removing his name from the DOC's mental health roster.  (*Id.* ¶ 101.)  Defendant Newton told Plaintiff that he could file a grievance if he wanted to, "that individuals write grievances on him about twice a week, and that it did not matter to him because ultimately no one can tell him how to do his job."  (*Id.* ¶ 102.)  Plaintiff ultimately utilized the DOC's grievance procedure.  (*Id.* ¶¶ 103-122.)

Based on the above allegations, Plaintiff alleges that Defendants violated his rights under the Eighth Amendment by forcing him to undergo treatment, deprived him of his right to refuse treatment, violated his rights to be free from cruel and unusual punishment as set forth in the Pennsylvania Constitution.  (*Id.* ¶¶ 123-128.)  Plaintiff also seeks to hold CCS vicariously liable for the acts and omissions of its employees and agents.  (*Id.* ¶¶ 129-130.)  As relief, Plaintiff seeks compensatory and punitive damages, as well as costs.  (*Id.* ¶¶ 131-133.)

## II. STANDARD OF REVIEW

### A. Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Twombly* and *Iqbal*, pleading requirements have shifted to a "more heightened form of pleading." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. *Id.* The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the

following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (noting that when considering a motion to dismiss, courts may consider

"documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading").

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### B. Civil Rights Statute, 42 U.S.C. § 1983

In order to state a viable claim under § 1983, a plaintiff must plead (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1141-42 (3d Cir. 1990); *Richardson v. Min Sec Cos.*, No. 3:cv-08-1312, 2008 WL 5412866, at *1 (M.D. Pa. Dec. 29, 2008).

## III. DISCUSSION

CCS seeks dismissal of Plaintiff's claims against it on the basis that CCS does

not provide mental health treatment to DOC inmates and that none of the named Defendants are employees of CCS. (Doc. No. 17 at 4.) CCS states that while it is the contract provider for medical care for the DOC, a "different and unrelated company, MHM Services, Inc., contracts with the [DOC] for provision of mental health care." (*Id.* at 2.) In support of its argument, CCS references the DOC's contracts, which are publicly available, with itself as well as MHM Services, Inc. (*Id.* at 2 n.1, 4 n.2.)

The Court may take judicial notice of publicly available documents, including publicly-executed contracts involving governmental entities such as the DOC. *See, e.g.*, *Guilfoil v. Correct Care Solutions*, No. 16-363-GMS, 2016 WL 5024190, at *3 (D. Del. Sept. 15, 2016) (taking judicial notice of healthcare contracts entered into with the Delaware Department of Corrections); *Turner v. Corr. Med. Servs., Inc.*, No. 13-11783, 2014 WL 861579, at *3 n.2 (E.D. Mich. Mar. 5, 2014) (taking judicial notice of contract between Michigan Department of Corrections and a correctional health care provider). Upon review of the contracts between the DOC and CCS and MHM Services, Inc., the Court agrees that Plaintiff has misidentified CCS as the entity responsible for providing mental health services to DOC inmates. Thus, Plaintiff has failed to state a plausible claim for relief against CCS, and the Court will therefore grant CCS's motion to dismiss.

## IV. LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). "A district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672 (3d Cir. 2014) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). Based on the foregoing, the Court concludes that it would be futile to allow Plaintiff leave to amend to state a claim for relief against CCS.

## V. CONCLUSION

For the foregoing reasons, CCS's motion to dismiss (Doc. No. 16) will be granted. Plaintiff will not be given leave to file an amended complaint as to his claims against CCS. An appropriate Order follows.

                                              s/Sylvia H. Rambo
                                              SYLVIA H. RAMBO
                                              United States District Judge

Dated: July 24, 2019