## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIC R. WILLIAMS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:19-cv-720** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **MICHELLE MAGEE,** *et al.*, | : | |
| **Defendants** | : | |

## MEMORANDUM

This matter is before the Court pursuant to the motion to dismiss (Doc. No. 19) filed by Defendants Platt, Shiptoski, and Newton, seeking to dismiss *pro se* Plaintiff Eric R. Williams ("Plaintiff")'s complaint (Doc. No. 1). Despite receiving an extension of time to do so (Doc. Nos. 25, 26), Plaintiff has not filed a response to the motion. Accordingly, because the time to respond has expired, the motion to dismiss is ripe for disposition. For the following reasons, the Court will grant the motion to dismiss but allow Plaintiff leave to file an amended complaint.

## I.     BACKGROUND

Plaintiff initiated the above-captioned action on April 24, 2019 by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants Michelle Magee ("Magee"), Dr. Platt ("Platt"),[1] Brian Shiptoski ("Shiptoski"), Jason Kowalski

---

[1] Defendants' filings indicate that Defendant Platt was incorrectly identified as Dr. Platt and instead should be identified as CRNP Platt. The Court will therefore direct the Clerk of Court to amend the docket to reflect Defendant Platt's correct title.

("Kowalski"), Dr. Andrew Newton ("Newton"), and Correct Care Solutions, LLC ("CCS"). (Doc. No. 1.) He also filed a motion for leave to proceed *in forma pauperis*. (Doc. No. 2.) By Order dated May 1, 2019, the Court granted Plaintiff leave to proceed *in forma pauperis* and directed service of his complaint upon the Defendants. CCS filed a motion to dismiss on July 1, 2019. (Doc. No. 16.) Defendants Magee and Kowalski filed an answer to the complaint on July 3, 2019. (Doc. No. 18.) Defendants Newton, Platt, and Shiptoski filed their motion to dismiss on July 8, 2019. (Doc. No. 19.) In a Memorandum and Order entered on July 24, 2019, the Court granted CCS's motion to dismiss. (Doc. Nos. 22, 23.)

Plaintiff is a former Pennsylvania state inmate. (Doc. No. 1 ¶ 1.) He maintains that he had no history of mental illness before his incarceration. (*Id.* ¶ 10.) On December 5, 2014, Plaintiff went through intake at SCI Graterford. (*Id.* ¶ 11.) That month, he met with a mental health professional and "explained that he was worried about his wife and he had not been able to sleep for several nights." (*Id.* ¶¶ 12-13.) He was prescribed Rymron, but eventually stopped taking the medication because it made him experience "near sedation." (*Id.* ¶¶ 14-15, 17.) Plaintiff was transferred to SCI Camp Hill in February of 2015. (*Id.* ¶ 18.) He maintains that he never had a "PRT meeting" at SCI Graterford and SCI Camp Hill. (*Id.* ¶ 19.)

Plaintiff was transferred to SCI Mahanoy in May of 2015. (*Id.* ¶ 21.) By January of 2016, his "marriage had become strained to the point that he and his wife started discussing divorce." (*Id.* ¶ 22.) Plaintiff began to lose sleep and his appetite, and on February 15, 2016, received a misconduct "for unauthorized use of telephone privileges while trying to save his marriage." (*Id* ¶¶ 24-25.) When Unit Manager Holly served Plaintiff with the misconduct, Plaintiff asked to see Defendant Magee in the psychology department. (*Id.* ¶ 26.)

When Plaintiff saw Defendant Magee, he told her that he was facing a potential divorce, was experiencing loss of appetite, and sleep, and had been "battling depression for approximately one and one half months." (*Id.* ¶¶ 27-28.) Defendant Magee referred him to Defendant Platt. (*Id.* ¶ 30.) One week later, Defendant Platt met with Plaintiff and asked him about his mental health history and his family's mental health history. (*Id.* ¶¶ 31-37.) Defendant Platt informed Plaintiff that he "was genetically predisposed to depression due to his father's history of mental illness." (*Id.* ¶ 38.) Defendant Platt prescribed Plaintiff Depakote and instructed him to take 300 milligrams twice a day. (*Id.* ¶ 39.)

Plaintiff began taking Depakote and "immediately began to have complications." (*Id.* ¶¶ 40-41.) In March of 2016, he told Defendant Platt that he "would be in a drug induced stupor throughout most of the day while still feeling

depressed." (*Id.* ¶ 42.) Defendant Platt told him that he needed to get used to the medication. (*Id.* ¶ 43.) Plaintiff continued to take Depakote, but at a follow-up visit in April of 2016, he told Defendant Platt he had not taken the medication in three (3) weeks "because 300 milligrams twice daily was still to[o] much for him." (*Id.* ¶ 44.) Defendant Platt decided to switch Plaintiff's prescription to 150 milligrams of Lithium twice daily. (*Id.* ¶ 47.)

In July of 2016, Plaintiff saw Defendant Shiptoski for a follow-up appointment. (*Id.* ¶ 49.) Plaintiff stated that he no longer felt depressed but that the Lithium was causing complications such as dry mouth, fatigue, stomach cramps, headaches, and muscle aches. (*Id.* ¶¶ 49-50.) Plaintiff also noted he "became withdrawn, easily annoyed and extremely agitated." (*Id.* ¶ 51.) Defendant Shiptoski noted that Plaintiff could have toxic levels of Lithium in his blood and ordered a blood draw. (*Id.* ¶ 52.) Plaintiff last took Lithium during the first week of August of 2016 but continued to have blood draws through December of 2016. (*Id.* ¶¶ 53-54.) From August of 2016 through December of 2017, his medication order remained in place and no one mentioned Plaintiff's non-compliance. (*Id.* ¶ 55.) Defendants Shiptoski and Magee met with Plaintiff every sixty (60) to ninety (90) days, and Plaintiff "regularly expressed that he no longer felt depressed and that he was cop[]ing with prison life relatively well." (*Id.*)

On December 5, 2017, Plaintiff had an annual review conducted by Unit Counselor Boltz. (*Id.* ¶ 56.) After giving Boltz his name and institution number, Boltz asked Plaintiff "why he was listed as D-stability with a Z-Code." (*Id.* ¶¶ 58-59.) Boltz explained that "D-stability with a Z-Code means he has extreme mental illness." (*Id.* ¶ 61.) Plaintiff asked to see Defendant Magee. (*Id.* ¶ 62.) When Defendant Magee arrived, Plaintiff asked her why he was listed as D-stability with a Z-Code. (*Id.* ¶ 63.) Defendant Magee stated that she did not know but that Plaintiff could speak to Defendant Shiptoski on December 21, 2017. (*Id.* ¶ 64.)

On December 21, 2017, Defendant Shiptoski told Plaintiff that he was not the one who diagnosed him as D-stability with a Z-Code. (*Id.* ¶¶ 65-66.) He advised Plaintiff "to seek the opinion of an outside physician." (*Id.* ¶ 68.) Plaintiff told Defendant Shiptoski that Defendant Magee had told him that he would not be granted parole if he continued to be non-compliant with his medication. (*Id.* ¶ 69.) He stated that "he no longer felt depressed and did not have a need to take medication." (*Id.* ¶ 70.) Defendant Shiptoski stated that he had not diagnosed Plaintiff and had not prescribed medication, and Plaintiff responded that he did not want to take medication but would do so anyway. (*Id.* ¶¶ 71-72.)

On January 3, 2018, Plaintiff had a PRT meeting with Defendants Magee, Shiptoski, and Kowalski. (*Id.* ¶ 75.) Plaintiff asked Defendant Magee if she agreed

with his diagnosis, and she answered affirmatively. (*Id.* ¶¶ 79-80.) When Plaintiff asked Defendant Shiptoski the same question, he refused to answer. (*Id.* ¶¶ 81-82.) Defendant Kowalski "chimed in and stated that Plaintiff ha[s] Bipolar Disorder which is why he ha[s] uncontrolled aggression." (*Id.* ¶ 83.) Plaintiff responded "that his actions and interactions with staff and inmates alike contradict[ed] this diagnosis" and that "he reported that he was depressed due to being faced with a potential divorce back in 2016." (*Id.* ¶ 84.) Defendant Magee reiterated that Plaintiff would not be granted parole if he refused to take medication. (*Id.* ¶ 86.) Plaintiff responded that he would take medication but would not take Lithium anymore. (*Id.* ¶ 87.) Defendant Magee told Plaintiff that she would submit a referral (*id.* ¶ 88), and Defendant Kowalski stated that he would prescribe medication and that Plaintiff should take every dose until he was reviewed by the parole board (*id.* ¶ 89).

On January 19, 2018, Plaintiff met with Defendant Newton. (*Id.* ¶ 92.) Defendant Newton stated that "Plaintiff did not need to take medication." (*Id.* ¶ 93.) He told Plaintiff that he did not believe that Plaintiff has Bipolar Disorder and noted that he would remove Plaintiff's name from the Department of Corrections ("DOC")' mental health roster. (*Id.* ¶ 95.) Plaintiff, however, had to sign a consent form to do so, which he did. (*Id.* ¶¶ 95-96.)

On February 19, 2018, Plaintiff saw Defendant Magee, who told him that Defendant Newton had diagnosed him with Antisocial Personality Disorder, stating that "this disorder was no big deal because he does not have to take medication to treat this disorder." (*Id.* ¶ 97.) Plaintiff told Defendant Magee that Defendant Newton had stated that Plaintiff's name would be removed from the DOC's mental health roster. (*Id.* ¶ 98.) Defendant Magee indicated that "she was unaware as to [w]hy [Defendant] Newton changed the diagnosis but that she would arrange for Plaintiff to speak with" him. (*Id.* ¶ 99.)

Plaintiff saw Defendant Newton again on March 19, 2018. (*Id.* ¶ 100.) He asked Defendant Newton why he had changed his diagnosis instead of removing his name from the DOC's mental health roster. (*Id.* ¶ 101.) Defendant Newton told Plaintiff that he could file a grievance if he wanted to, "that individuals write grievances on him about twice a week, and that it did not matter to him because ultimately no one can tell him how to do his job." (*Id.* ¶ 102.) Plaintiff ultimately utilized the DOC's grievance procedure. (*Id.* ¶¶ 103-122.)

Based on the above allegations, Plaintiff alleges that Defendants violated his rights under the Eighth Amendment by forcing him to undergo treatment, deprived him of his right to refuse treatment, violated his rights to be free from cruel and unusual punishment as set forth in the Pennsylvania Constitution. (*Id.* ¶¶ 123-128.)

Plaintiff also seeks to hold CCS vicariously liable for the acts and omissions of its employees and agents. (*Id.* ¶¶ 129-130.) As relief, Plaintiff seeks compensatory and punitive damages, as well as costs. (*Id.* ¶¶ 131-133.)

## II. STANDARD OF REVIEW

### A. Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Twombly* and *Iqbal*, pleading requirements have shifted to a "more heightened form of pleading." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. *Id.* The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'"

*Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B

Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed.

2004)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir.

2002) (noting that when considering a motion to dismiss, courts may consider

"documents whose contents are alleged in the complaint and whose authenticity no

party questions, but which are not physically attached to the pleading").

In the context of *pro se* prisoner litigation specifically, the court must be

mindful that a document filed *pro se* is "to be liberally construed."  *Estelle v.*

*Gamble*, 429 U.S. 97, 106 (1976).  A *pro se* complaint, "however inartfully pleaded,"

must be held to "less stringent standards than formal pleadings drafted by lawyers"

and can only be dismissed for failure to state a claim if it appears beyond a doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle

him to relief.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### B.    Civil Rights Statute, 42 U.S.C. § 1983

In order to state a viable claim under § 1983, a plaintiff must plead (1) that the

conduct complained of was committed by a person acting under color of state law,

and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity

secured by the Constitution or laws of the United States. *Groman v. Twp. of*

*Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *Shaw by Strain v. Strackhouse*, 920

F.2d 1135, 1141-42 (3d Cir. 1990); *Richardson v. Min Sec Cos.*, No. 3:cv-08-1312,

2008 WL 5412866, at *1 (M.D. Pa. Dec. 29, 2008).

## III.   DISCUSSION

Defendants Platt, Shiptoski, and Newton seek dismissal of Plaintiff's claims

against them for the following reasons: (1) Plaintiff's claims against Defendant Platt

are barred by the statute of limitations; (2) Plaintiff's claims for damages under the

Pennsylvania Constitution are improper; and (3) Plaintiff has not set forth plausible

Eighth Amendment claims against them.  (Doc. No. 24 at 6-8.)  The Court considers

each argument in turn below.

### A.   Statute of Limitations

Defendants first contend that Plaintiff's claims against Defendant Platt are

barred by the statute of limitations.  (Doc. No. 24 at 6-7.)  The Supreme Court has

instructed that 42 U.S.C. § 1983 claims are properly characterized as tort actions for

the recovery of damages for personal injury, and that federal courts must borrow the

statute of limitations governing personal injury actions from the state where § 1983

actions are brought.  *See Wilson v. Garcia*, 471 U.S. 262, 275-76 (1985); *Garvin v.

City of Phila.*, 354 F.3d 215, 220 (3d Cir. 2003) (noting that there is a two-year

statute of limitations for such actions in Pennsylvania); 42 Pa. Cons. Stat. Ann.

§ 5524.  Additionally, a § 1983 "cause of action accrues when the plaintiff knew or

11

should have known of the injury upon which [his] action is based." *See Sameric Corp. of Del. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998).

Defendants assert that Plaintiff's claims against Defendant Platt are time-barred because they "stem from events which occurred between February 2016 and April 2016." (Doc. No. 24 at 6.) They argue that Plaintiff filed his complaint "well over two years after he was treated by [Defendant] Platt." (*Id.* at 7.) In his complaint, however, Plaintiff alleges that he utilized the DOC's grievance procedure to address his claims, and that the final appeal decisions for his grievances were dated October 15, 2018. (Doc. No. 1 ¶¶ 103-122.) The Third Circuit has held that "the [Prison Litigation Reform Act] is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts administrative remedies." *See Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 603 (3d Cir. 2015). While it is not apparent from Plaintiff's complaint that he grieved his claims against Defendant Platt before filing this lawsuit, the Court cannot conclusively determine that his claims are time-barred given his assertions that he utilized the grievance procedure. Accordingly, the Court declines to grant the motion to dismiss on the basis that Plaintiff's claims against Defendant Platt are barred by the statute of limitations.

### B. Pennsylvania Constitution Claims

In Count III of his complaint, Plaintiff seeks damages based on Defendants' alleged violation of his rights under Article I, Section 13 of the Pennsylvania Constitution "and its prohibition against the infliction of cruel and unusual punishment." (Doc. No. 1 ¶ 128.) As the Third Circuit has recognized, however, "[n]o Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution." *Pocono Mtn. Charter Sch. v. Pocono Mtn. Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011). Accordingly, the Court will grant Defendants' motion to dismiss Plaintiff's claims pursuant to the Pennsylvania Constitution against them.

### C. Eighth Amendment Claims

Eighth Amendment claims have both objective and subjective components. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component. *Id.* The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." *Id.*

The objective component of an Eighth Amendment medical care claim, *i.e.*, whether a plaintiff's medical needs were serious, has its roots in contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1 (1992). A medical need

13

is serious if it is one that has been diagnosed by a physician as mandating treatment or is one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991); *Monmouth Cty. Corr. Institution Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987); *West v. Keve*, 571 F.2d 158, 162-63 n.6 (3d Cir. 1978). The serious medical need element contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain. *See Lanzaro*, 834 F.2d at 347.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those [individuals who are] incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). In order to establish a claim under § 1983 based on the Eighth Amendment, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004), *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *Farmer*, 511 U.S. at 837. Because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation, nor can disagreements over a prison physician's medical judgment. *White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990). Thus, this standard "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients.

14

Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'" *Little v. Lycoming Cty.*, 912 F. Supp. 809, 815 (M.D. Pa. 1996) (quoting *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)).

A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). For example, "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Id.* at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action, and inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

In his complaint, Plaintiff suggests that Defendants Platt, Shiptoski, and Newton violated his Eighth Amendment rights by subjecting him to "forced administration of treatment." (Doc. No. 1 ¶¶ 124, 126.) Assuming, without deciding, that Plaintiff's medical need was serious in the constitutional sense, the

Court concludes that the allegations in the complaint fail to establish Eighth Amendment claims against Defendants Platt, Shiptoski, and Newton. As noted above, Defendant Platt treated Plaintiff's mental health by initially prescribing Depakote and then switching Plaintiff's prescription to Lithium when Plaintiff began experiencing complications from the Depakote. (*Id.* ¶¶ 31-48.) Defendant Shiptoski reduced Plaintiff's Lithium prescription and continued to see him every 60-90 days, from August 2016 through December 2017, for treatment. (*Id.* ¶¶ 49-55.) Moreover, Defendant Newton permitted Plaintiff to sign a consent form agreeing to be removed from the DOC's mental health roster. (*Id.* ¶¶ 92-96.) Furthermore, Plaintiff's allegations throughout the complaint indicate that he often did not take the medications he was prescribed.

Plaintiff's complaint, as pled, is entirely premised on his disagreement with the medical judgment of Defendants Platt, Shiptoski, and Newton. There is no indication that Plaintiff was subjected to "forced administration of treatment." The complaint explicitly indicates that Defendant Platt, Shiptoski, and Newton provided treatment for his mental health and that, eventually, Plaintiff's medications were discontinued and he was permitted to consent to be removed from the DOC's mental health roster. Plaintiff's disagreements with their judgments simply do not suffice to maintain Eighth Amendment claims against them. *See Durmer*, 991 F.2d at 69;

*Lanzaro*, 834 F.2d at 346; *Little*, 912 F. Supp. at 815.

## IV.    LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). "A district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672 (3d Cir. 2014) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). Here, with respect to Plaintiff's claims against Defendants Platt, Shiptoski, and Newton, it is neither clear that amendment would be futile nor is there any basis to believe it would be inequitable. Accordingly, Plaintiff will be granted leave to file an amended complaint as to his claims against these Defendants.

## V.    CONCLUSION

For the foregoing reasons, the motion to dismiss (Doc. No. 19) filed by Defendants Platt, Shiptoski, and Newton will be granted. Plaintiff's claims for damages pursuant to the Pennsylvania Constitution will be dismissed with prejudice, and his Eighth Amendment claims will be dismissed without prejudice. Plaintiff

will be granted leave to file an amended complaint with respect to his Eighth Amendment claims against Defendants Platt, Shiptoski, and Newton. An appropriate Order follows.

s/Sylvia H. Rambo
Sylvia H. Rambo
United States District Judge

Dated: September 18, 2019