## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERIC R. WILLIAMS,** | : | |
| **Plaintiff,** | : | |
| | : | **No. 1:19-cv-720** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **MICHELLE MCGEE, *et al.*,[1]** | : | |
| **Defendants** | : | |

### MEMORANDUM

This matter is before the Court pursuant to the motion for summary judgment filed by remaining Defendants Michelle McGee ("McGee") and Jason Kowalski ("Kowalski"). (Doc. No. 35.) *Pro se* Plaintiff Eric R. Williams ("Plaintiff") has filed neither a brief in opposition nor a motion seeking an extension of time to do so. Accordingly, because the time for Plaintiff to respond has expired, Defendants' motion for summary judgment is ripe for disposition.

## I.   BACKGROUND

### A.   Procedural Background

Plaintiff initiated the above-captioned action on April 24, 2019 by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants McGee, Kowalski, Dr. Platt ("Platt"), Brian Shiptoski ("Shiptoski"), Dr. Andrew Newton ("Newton"), and

---

[1] Plaintiff initially named Michelle Magee as a Defendant in this matter. Defendants' submissions, however, indicate that the proper spelling for this Defendant's last name is McGee. The Court, therefore, will direct the Clerk of Court to amend the docket to reflect the proper spelling.

Correct Care Solutions, LLC ("CCS").  (Doc. No. 1.)  On May 1, 2019, the Court granted Plaintiff leave to proceed *in forma pauperis* and directed service of his complaint upon Defendants.  (Doc. No. 5.)  CCS filed a motion to dismiss on July 1, 2019.  (Doc. No. 16.)  Defendants McGee and Kowalski filed an answer to the complaint on July 3, 2019.  (Doc. No. 18.)  Defendants Newton, Platt, and Shiptoski filed a motion to dismiss on July 8, 2019.  (Doc. No. 19.)

In a Memorandum and Order dated July 24, 2019, the Court granted CCS's motion to dismiss.  (Doc. Nos. 22, 23.)  On September 18, 2019, the Court granted the motion to dismiss filed by Defendants Newton, Platt, and Shiptoski.  (Doc. Nos. 27, 28.)  The Court granted Plaintiff leave to file an amended complaint.  (*Id.*)  Plaintiff, however, did not do so.  Plaintiff and Defendants McGee and Williams subsequently engaged in discovery.  After receiving an extension of time (Doc. Nos 33, 34), Defendants McGee and Kowalski filed their motion for summary judgment (Doc. No. 35) and supporting materials (Doc. Nos. 36, 37).

## B.    Summary of Plaintiff's Complaint

Plaintiff is a former Pennsylvania state inmate.  (Doc. No. 1 ¶ 1.)  He maintains that he had no history of mental illness before his incarceration.  (*Id.* ¶ 10.)  On December 5, 2014, Plaintiff went through intake at SCI Graterford.  (*Id.* ¶ 11.)  That month, he met with a mental health professional and "explained that he was

worried about his wife and he had not been able to sleep for several nights." (*Id.* ¶¶ 12-13.) He was prescribed Rymron, but eventually stopped taking the medication because it made him experience "near sedation." (*Id.* ¶¶ 14-15, 17.) Plaintiff was transferred to SCI Camp Hill in February of 2015. (*Id.* ¶ 18.) He maintains that he never had a "PRT meeting" at SCI Graterford and SCI Camp Hill. (*Id.* ¶ 19.)

Plaintiff was transferred to SCI Mahanoy in May of 2015. (*Id.* ¶ 21.) By January of 2016, his "marriage had become strained to the point that he and his wife started discussing divorce." (*Id.* ¶ 22.) Plaintiff began to lose sleep and his appetite, and on February 15, 2016, received a misconduct "for unauthorized use of telephone privileges while trying to save his marriage." (*Id* ¶¶ 24-25.) When Unit Manager Holly served Plaintiff with the misconduct, Plaintiff asked to see Defendant McGee in the psychology department. (*Id.* ¶ 26.)

When Plaintiff saw Defendant McGee, he told her that he was facing a potential divorce, was experiencing loss of appetite, and sleep, and had been "battling depression for approximately one and one half months." (*Id.* ¶¶ 27-28.) Defendant Magee referred him to Defendant Platt. (*Id.* ¶ 30.) One week later, Defendant Platt met with Plaintiff and asked him about his mental health history and his family's mental health history. (*Id.* ¶¶ 31-37.) Defendant Platt informed Plaintiff that he "was genetically predisposed to depression due to his father's history of

3

mental illness." (*Id.* ¶ 38.)   Defendant Platt prescribed Plaintiff Depakote and instructed him to take 300 milligrams twice a day.  (*Id.* ¶ 39.)

Plaintiff began taking Depakote and "immediately began to have complications." (*Id.* ¶¶ 40-41.)  In March of 2016, he told Defendant Platt that he "would be in a drug induced stupor throughout most of the day while still feeling depressed." (*Id.* ¶ 42.)  Defendant Platt told him that he needed to get used to the medication. (*Id.* ¶ 43.)  Plaintiff continued to take Depakote, but at a follow-up visit in April of 2016, he told Defendant Platt he had not taken the medication in three (3) weeks "because 300 milligrams twice daily was still to[o] much for him." (*Id.* ¶ 44.) Defendant Platt decided to switch Plaintiff's prescription to 150 milligrams of Lithium twice daily.  (*Id.* ¶ 47.)

In July of 2016, Plaintiff saw Defendant Shiptoski for a follow-up appointment. (*Id.* ¶ 49.)  Plaintiff stated that he no longer felt depressed but that the Lithium was causing complications such as dry mouth, fatigue, stomach cramps, headaches, and muscle aches. (*Id.* ¶¶ 49-50.)  Plaintiff also noted he "became withdrawn, easily annoyed and extremely agitated." (*Id.* ¶ 51.) Defendant Shiptoski noted that Plaintiff could have toxic levels of Lithium in his blood and ordered a blood draw. (*Id.* ¶ 52.)  Plaintiff last took Lithium during the first week of August of 2016 but continued to have blood draws through December of 2016. (*Id.* ¶¶ 53-

4

54.)   From August of 2016 through December of 2017, his medication order remained in place and no one mentioned Plaintiff's non-compliance.  (*Id.* ¶ 55.) Defendants Shiptoski and McGee met with Plaintiff every sixty (60) to ninety (90) days, and Plaintiff "regularly expressed that he no longer felt depressed and that he was cop[]ing with prison life relatively well." (*Id.*)

On December 5, 2017, Plaintiff had an annual review conducted by Unit Counselor Boltz.  (*Id.* ¶ 56.)  After giving Boltz his name and institution number, Boltz asked Plaintiff "why he was listed as D-stability with a Z-Code." (*Id.* ¶¶ 58-59.)  Boltz explained that "D-stability with a Z-Code means he has extreme mental illness."  (*Id.* ¶ 61.)  Plaintiff asked to see Defendant Magee.  (*Id.* ¶ 62.)  When Defendant McGee arrived, Plaintiff asked her why he was listed as D-stability with a Z-Code.  (*Id.* ¶ 63.)   Defendant McGee stated that she did not know but that Plaintiff could speak to Defendant Shiptoski on December 21, 2017.  (*Id.* ¶ 64.)

On December 21, 2017, Defendant Shiptoski told Plaintiff that he was not the one who diagnosed him as D-stability with a Z-Code.  (*Id.* ¶¶ 65-66.)  He advised Plaintiff "to seek the opinion of an outside physician."  (*Id.* ¶ 68.)  Plaintiff told Defendant Shiptoski that Defendant McGee had told him that he would not be granted parole if he continued to be non-compliant with his medication.  (*Id.* ¶ 69.) He stated that "he no longer felt depressed and did not have a need to take

medication." (*Id.* ¶ 70.)  Defendant Shiptoski stated that he had not diagnosed Plaintiff and had not prescribed medication, and Plaintiff responded that he did not want to take medication but would do so anyway.  (*Id.* ¶¶ 71-72.)

On January 3, 2018, Plaintiff had a PRT meeting with Defendants McGee, Shiptoski, and Kowalski.  (*Id.* ¶ 75.)  Plaintiff asked Defendant McGee if she agreed with his diagnosis, and she answered affirmatively.  (*Id.* ¶¶ 79-80.)  When Plaintiff asked Defendant Shiptoski the same question, he refused to answer.  (*Id.* ¶¶ 81-82.)  Defendant Kowalski "chimed in and stated that Plaintiff ha[s] Bipolar Disorder which is why he ha[s] uncontrolled aggression."  (*Id.* ¶ 83.)  Plaintiff responded "that his actions and interactions with staff and inmates alike contradict[ed] this diagnosis" and that "he reported that he was depressed due to being faced with a potential divorce back in 2016."  (*Id.* ¶ 84.)  Defendant McGee reiterated that Plaintiff would not be granted parole if he refused to take medication.  (*Id.* ¶ 86.)  Plaintiff responded that he would take medication but would not take Lithium anymore. (*Id.* ¶ 87.) Defendant McGee told Plaintiff that she would submit a referral (*id.* ¶ 88), and Defendant Kowalski stated that he would prescribe medication and that Plaintiff should take every dose until he was reviewed by the parole board (*id.* ¶ 89).

On January 19, 2018, Plaintiff met with Defendant Newton. (*Id.* ¶ 92.) Defendant Newton stated that "Plaintiff did not need to take medication." (*Id.* ¶ 93.) He told Plaintiff that he did not believe that Plaintiff has Bipolar Disorder and noted that he would remove Plaintiff's name from the Department of Corrections ("DOC")' mental health roster. (*Id.* ¶ 95.) Plaintiff, however, had to sign a consent form to do so, which he did. (*Id.* ¶¶ 95-96.)

On February 19, 2018, Plaintiff saw Defendant McGee, who told him that Defendant Newton had diagnosed him with Antisocial Personality Disorder, stating that "this disorder was no big deal because he does not have to take medication to treat this disorder." (*Id.* ¶ 97.) Plaintiff told Defendant McGee that Defendant Newton had stated that Plaintiff's name would be removed from the DOC's mental health roster. (*Id.* ¶ 98.) Defendant McGee indicated that "she was unaware as to [w]hy [Defendant] Newton changed the diagnosis but that she would arrange for Plaintiff to speak with" him. (*Id.* ¶ 99.)

Plaintiff saw Defendant Newton again on March 19, 2018. (*Id.* ¶ 100.) He asked Defendant Newton why he had changed his diagnosis instead of removing his name from the DOC's mental health roster. (*Id.* ¶ 101.) Defendant Newton told Plaintiff that he could file a grievance if he wanted to, "that individuals write grievances on him about twice a week, and that it did not matter to him because

ultimately no one can tell him how to do his job." (*Id.* ¶ 102.)  Plaintiff ultimately

utilized the DOC's grievance procedure.  (*Id.* ¶¶ 103-122.)

Based on the above allegations, Plaintiff alleges that Defendants violated his

rights by forcing him to undergo treatment, deprived him of his Eighth Amendment

rights by not allowing him to refuse treatment, and violated his rights to be free from

cruel and unusual punishment as set forth in the Pennsylvania Constitution.  (*Id.*

¶¶ 123-128.)  As relief, Plaintiff seeks compensatory and punitive damages, as well

as costs.  (*Id.* ¶¶ 131-133.)

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the court to render summary

judgment "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"[T]his standard provides that the mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no genuine issue of material

fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would

affect the outcome of the case under applicable substantive law.  *Id.* at 248; *Gray v.*

*York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material

fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden

of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White*, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.* (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. *See Sanders v. Beard*, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); *Thomas v. Norris*, No. 02-CV-01854, 2006 WL

2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules

of Civil Procedure).

## III.    STATEMENT OF MATERIAL FACTS[2]

Defendants McGee and Kowalski are Psychological Services Specialists at

SCI Mahanoy and held that position during the time period relevant to the events set

forth in Plaintiff's complaint.   (Doc. No. 36 ¶¶ 3-4.)   As Psychological Services

Specialists, Defendants McGee and Kowalski are not licensed to prescribe medicine.

(*Id.* ¶¶ 5, 7.)   Defendants McGee and Kowalski neither prescribed medicine to

---

[2] The Local Rules of this Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1.  The Rule further requires the inclusion of references to the parts of the record that support the statements.  *Id.* Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.  *See id.*  Unless otherwise noted, the factual background herein is taken from Defendants' Rule 56.1 statement of material facts.  (Doc. No. 36.)

Plaintiff did not file a response to Defendants' statement of facts in compliance with M.D. Pa. L.R. 56.1.  However, he has filed a verified amended complaint, which may be treated as an affidavit in opposition to summary judgment.  *See Ziegler v. Eby*, 77 F. App'x 117, 120 (3d Cir. 2003) (noting that "the complaint was not verified, thereby precluding the District Court from treating it as the equivalent of an affidavit for purposes of Federal Rule of Civil Procedure 56(e)"); *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit on summary judgment motion); *see also Boomer v. Lewis*, No. 06-850, 2009 WL 2900778, at *2 n.4 (M.D. Pa. Sept. 9, 2009) ("A verified complaint may be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific and based on personal knowledge.").  However, this Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question."  *Hammonds v. Collins*, Civ. No. 12-236, 2016 WL 1621986, at *3 (M.D. Pa. Apr. 20, 2016) (citing *Brooks v. Am. Broad. Co.*, 999 F.2d 167, 172 (6th Cir. 1993)).   Accordingly, unless otherwise noted, the Court deems the facts set forth by Defendants to be undisputed.  *See* M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2).

Plaintiff nor provided a diagnosis for Plaintiff.  (*Id.* ¶¶ 6, 8, 9-10.)  Rather, Plaintiff's

medications were prescribed by Defendant Platt.  (*Id.* ¶ 13.)  Defendants McGee and

Kowalski "did not involuntarily administer medication for the Plaintiff."  (*Id.* ¶¶ 16-

17.)   Defendants McGee and Kowalski did not vote on Plaintiff's parole

recommendation.  (*Id.* ¶¶ 18-19.)  Plaintiff was granted parole in December of 2018.

(*Id.* ¶ 20.)

## IV.   DISCUSSION

Defendants argue that they are entitled to summary judgment because: (1)

they were not personally involved in the decisions regarding Plaintiff's

prescriptions; (2) Plaintiff made the decision to take the medication; (3) the alleged

side effects do not constitute serious medical conditions; (4) negligence is

insufficient to establish liability under the Eighth Amendment; and (5) Plaintiff's

claims under the Pennsylvania Constitution should be dismissed.  (Doc. No. 37 at

3.)

### A.   Claims Regarding Right to Refuse Treatment

In Count I of his complaint, Plaintiff alleges that Defendants violated his right

to refuse treatment by threatening to deny him parole if he was non-compliant with

his medication.  (Doc. No. 1 ¶ 124.)  Plaintiff suggests that Defendants' threat to do

so "constitutes forced administration of treatment."  (*Id.*)   In Count II of his

12

complaint, Plaintiff alleges that Defendants' "acts and omissions . . . by forced administration of treatment for loss of sleep and appetite due to marital problems constitutes a deliberate indifference to Plaintiff's right to refuse treatment thereby establishing a violation of the Eighth Amendment to the United States Constitution." (*Id.* ¶ 126.)

Although Plaintiff has framed these claims as violations of the Eighth Amendment, "the Eighth Amendment does not define the total universe of legal rights applicable to inmates in a medical setting." *Leaphart v. Prison Health Servs. Inc.*, No. 3:10-cv-1019, 2010 WL 5391315, at *6 (M.D. Pa. Nov. 22, 2010), *Report and Recommendation adopted*, 2010 WL 5391188 (M.D. Pa. Dec. 22, 2010). Courts have recognized that the "Due Process clause of the Fourteenth Amendment substantively protects certain fundamental rights. Among these are the right to be free from unjustified intrusions into the body, the related right to refuse unwanted medical treatment, and . . . the right to sufficient information to intelligently exercise those rights." *White v. Napoleon*, 897 F.2d 103, 111 (3d Cir. 1990) (internal citations omitted). The Third Circuit has held that "convicted prisoners . . . retain a limited right to refuse treatment and a related right to be informed of the proposed treatment and viable alternatives. The scope of the right to refuse treatment, however, must be circumscribed by legitimate countervailing State interests." *Id.* at 113; *see also*

*Sell v. United States*, 439 U.S. 166, 178 (2003) (noting that "an individual has a 'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs'" (quoting *Washington v. Harper*, 494 U.S. 210, 221 (1990))); *Riggins v. Nevada*, 504 U.S. 127, 133-35 (1992) (noting that "[t]he forcible injection of medication into a nonconsenting person's body . . . represents a substantial interference with that person's liberty"); *Pabon v. Wright*, 459 F.3d 241, 246 (2d Cir. 2006) (concluding that "the Fourteenth Amendment's recognized liberty interest in an individual's right to refuse medical treatment carries with it a concomitant right to such information as a reasonable patient would deem necessary to make an informed decision regarding medical treatment"). Thus, "a prison may compel a prisoner to accept treatment when prison officials, in the exercise of professional judgment, deem it necessary to carry out valid medical or penological objectives." *White*, 897 F.2d at 113. To establish a violation of the constitutional right to medical information, "a prisoner must show that (1) government officials failed to provide him with such information; (2) this failure caused him to undergo medical treatment that he would have refused had he been so informed; and (3) the officials' failure was undertaken with deliberate indifference to the prisoner's right to refuse medical treatment." *Pabon*, 459 F.3d at 246.

14

In the instant case, Plaintiff does not allege that his constitutional right to medical information was violated. Rather, he maintains that his right to refuse treatment was violated because Defendant McGee, in Defendant Kowalski's presence, told him that he would not be granted parole if he was not compliant with his medication. (Doc. No. 1 ¶¶ 69, 86.) Nothing in the record before the Court, however, including Plaintiff's verified complaint, establishes a genuine issue of material fact from which a reasonable jury could conclude that Defendants McGee and Kowalski violated Plaintiff's right to refuse treatment. As an initial matter, the record indicates that Defendants McGee and Kowalski are not licensed to prescribe medication and never prescribed medication to Plaintiff while he was incarcerated at SCI Mahanoy. (Doc. No. 36 ¶¶ 5-8.) Moreover, Defendants McGee and Kowalski did not vote on Plaintiff's parole recommendation. (*Id.* ¶¶ 18-19.) Finally, the evidence before the Court indicates that Plaintiff decided to take his medication because of Defendant McGee's warning concerning parole. (Doc. No. 1 ¶¶ 86-87, 90; Doc. No. 36-3 at 52-54.) To the extent Plaintiff argues that Defendants McGee and Kowalski compelled him to become compliant to be granted parole, "rehabilitation of inmates has been recognized as a 'valid penological interest.'" *Hampton v. Wetzel*, No. 1:15-cv-897, 2016 WL 561951, at *5 (M.D. Pa. Feb. 12, 2016) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)). Plaintiff

15

has not cited, and the Court has not located, any case concluding that a warning that non-compliance with medication could affect parole eligibility constitutes a violation of the right to refuse medical treatment. Thus, the Court will grant Defendants summary judgment with respect to this claim. *See George v. Rockland State Psychiatric Ctr.*, No. 10-cv-8091 (NSR), 2014 WL 5410059, at *6-7 (S.D.N.Y. Oct. 23, 2014) (granting summary judgment to defendants as to plaintiff's Fourteenth Amendment claim regarding forced administration of medication because there was no evidence of record that the defendants forced him to comply with their suggestions of medication and drug treatment).[3]

---

[3] Plaintiff's complaint could also be construed as raising a First Amendment retaliation claim against Defendants McGee and Kowalski for forcing him to take medication as well as stating that he would not be granted parole if he did not comply. Defendants have not addressed such a claim in their brief; nevertheless, the Court concludes that Plaintiff cannot maintain such a claim. To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Id.* at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Nothing in the record, however, suggests that Plaintiff was engaged in constitutionally protected activity. Moreover, nothing suggests that he suffered adverse action because he was granted parole in December 2018. (Doc. No. 36 ¶ 20.) Accordingly, to the extent Plaintiff pleads a retaliation claim, such a claim fails. *See George*, 2014 WL 5410059, at *5-6 (granting summary judgment to defendants on plaintiff's claim that defendants retaliated against him for his complaints "by attempting to force him to take psychotropic medication as well as threatening to report noncompliance to [his] parole officer's supervisor").

## B.      Eighth Amendment Medical Care Claim

Defendants McGee and Kowalski appear to have construed Plaintiff's complaint as asserting an Eighth Amendment violation concerning adequate medical care based upon side effects he experienced from the lithium he was prescribed.  For the reasons set forth below, the Court agrees with Defendants that Plaintiff cannot maintain such a claim against them.

In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  To establish an Eighth Amendment deliberate indifference claim, a claimant must demonstrate "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197.  The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to

inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842)). Moreover, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.*

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious. A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Not every condition is a serious medical need; instead, the serous medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. *See id.* Moreover, because only egregious acts or omissions can violate this

standard, mere medical malpractice cannot result in an Eighth Amendment violation. *See White*, 897 F.2d at 108-10; *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("medical malpractice does not become a constitutional violation merely because the victim is a prisoner").

In his complaint, Plaintiff avers that he experienced complications from the lithium. (Doc. No. 1 ¶ 49.) He maintains that he experienced "dry mouth, fatigue, stomach cramps, diarrhea, muscle aches, muscle twitches[,] and headaches." (*Id.* ¶ 50.) He also alleges that he "became withdrawn, easily annoyed[,] and extremely agitated." (*Id.* ¶ 51.) Defendants assert that these side effects are not indicative of a serious medical condition such that Eighth Amendment liability can be established. (Doc. No. 37 at 7-8.) Assuming *arguendo*, however, that such side effects do constitute a serious medical condition, Plaintiff has not demonstrated that Defendants McGee and Kowalski were deliberately indifferent to his medical needs. As noted above, Defendants McGee and Kowalski are not licensed to prescribe medication and never prescribed medication to Plaintiff while he was incarcerated at SCI Mahanoy. (Doc. No. 36 ¶¶ 5-8.) Thus, Plaintiff has failed to demonstrate that Defendants McGee and Kowalski were personally involved in the alleged misconduct such that they could be held liable for the alleged violation of Plaintiff's Eighth Amendment rights. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)

19

(noting that individual liability may only be imposed under § 1983 if the state actor played an "affirmative part" in the alleged misconduct (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). Moreover, nothing in the record indicates that Defendants McGee and Kowalski had reason to believe or actual knowledge that Plaintiff's medical providers were allegedly mistreating or failing to treat him. *See Spruill*, 372 F.3d at 236. Accordingly, the Court will grant Defendants summary judgment with respect to any Eighth Amendment claim Plaintiff is asserting concerning the adequacy of his medical care.

### C. Pennsylvania Constitution Claims

In Count III of his complaint, Plaintiff seeks damages based on Defendants' alleged violation of his rights under Article I, Section 13 of the Pennsylvania Constitution "and its prohibition against the infliction of cruel and unusual punishment." (Doc. No. 1 ¶ 128.) As the Third Circuit has recognized, however, "[n]o Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution." *Pocono Mtn. Charter Sch. v. Pocono Mtn. Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011). Accordingly, the Court will grant Defendants' motion for summary judgment with respect to Plaintiff's claims pursuant to the Pennsylvania Constitution.

## V.     CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc.

No. 35) will be granted.  An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Date: April 28, 2020